Jon G. Shadinger Jr., Esq. (036232017)
Shadinger Law, LLC
2220 N. East Avenue
Vineland, NJ 08360
(609) 319-5399
js@shadingerlaw.com
*Attorney for Plaintiff, Dennis Maurer*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**TRENTON VICINAGE**

| | |
|---|---|
| DENNIS MAURER, an Individual,<br><br>Plaintiff,<br><br>vs.<br><br>7-ELEVEN, INC., a Texas Corporation,<br><br>Defendant. | Case No. 3:26-cv-14079<br><br>**COMPLAINT** |

## Introduction

Plaintiff, DENNIS MAURER, an individual ("Plaintiff"), on his own behalf and on the behalf of all other similarly situated mobility impaired persons hereby sues the Defendant, 7-ELEVEN, INC., a Texas Corporation ("Defendant"), for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.* ("LAD").

## The Parties

1. Plaintiff, DENNIS MAURER, is an individual over eighteen years of age and is otherwise *sui juris*. Mr. Maurer resides at 8 Prospect Avenue, Egg Harbor Township, NJ 08234.

2. Defendant, 7-ELEVEN, INC., owns and/or operates a place of public accommodation alleged by the Plaintiff to be operating in violation of Title III of the ADA and the LAD. Defendant's main business address, as reported to the New Jersey Division of Revenue, is 3200 Hackberry Road, Irving, TX 75063.

**Jurisdiction and Venue**

3. Defendant's property/place of public accommodation – a convenience store known as 7-Eleven (Store #26992) – is located at 1215 NW Central Avenue, Seaside Park, NJ 08752 (also known as Block 54, Lot 31 on the municipal tax map of the Borough of Seaside Park, Ocean County) (the "Property" or "7-Eleven").

4. Venue is properly located in the District of New Jersey because venue lies in the judicial district of the property situs. The Property is located in and does business within this judicial district.

5. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*[1]

6. Jurisdiction over the state law claim vests with this Court pursuant to 28 U.S.C. § 1367.

7. The Defendant owns, leases, leases to, and/or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA. The Defendant is thus required to comply with the obligations of the ADA.[2]

---

[1] *See also* 28 U.S.C. §§ 2201 and 2202.
[2] 28 C.F.R. §§ 36.201(a) and 36.104.

8. Plaintiff is an individual with disabilities as defined by and pursuant to the ADA. Mr. Maurer has multiple sclerosis and therefore has a physical impairment that substantially limits many of his major life activities[3] including, but not limited to, not being able to walk, stand, reach, or lift. Mr. Maurer, at all times, requires the use of a wheelchair to ambulate.

## Factual Background

9. Mr. Maurer is a staunch advocate of the ADA. Since becoming mobility impaired (and having to fully rely on the use of his wheelchair to ambulate) he has dedicated his life to the elimination of accessibility discrimination so that he, and others like him, may have full and equal enjoyment of all public accommodations without fear of discrimination and repeated exposure to architectural barriers.

10. Mr. Maurer is the President of an advocacy group, known as The Independence Project, whose goal is to foster a community of disabled people, educate them as to their rights, and ensure their accessibility to places of public accommodation across the country.

11. Mr. Maurer continues to encounter architectural barriers at many of the places that he visits. Seemingly trivial architectural features such as parking spaces, curb ramps, and door handles are taken for granted by the non-disabled but, when improperly designed or implemented, can be arduous and even dangerous to those in wheelchairs – the same holds true for the Property which forms the basis of this action.

12. The barriers to access that Mr. Maurer experiences at differing places of public accommodation are often similar in nature. For example, he is repeatedly faced with sloping in parking lots, improper curb ramps, abrupt changes of level within paths of travel, and non-accessible restrooms (even when designated "accessible" or "handicapped"). He has become

---

[3] As defined by 28 C.F.R. § 36.105(b)(1)–(2).

frustrated and disheartened by the repetitiveness of the complaints he has been forced to make to the employees and management at various establishments in the past; most often to no avail. Thus, he now finds his redress through the ADA; as Congress intended.

13. As part of his duties within The Independence Project, Mr. Maurer inspects properties that were previously in violation of the ADA and subject to litigation by the advocacy group and/or its members. Such properties are inspected by Mr. Maurer, or other members (based on scheduling and geography), in order to determine if such have been made accessible and continue to remain in compliance; it is his normal practice to inspect the properties under his purview at least twice per year. Additionally, Mr. Maurer inspects additional properties that he visits as a patron, or when they are incident to his inspection routes, and/or when they are along his usual travel routes.

14. The properties in close proximity to the Property which have previously been subject to litigation by The Independence Project and/or its members for non-compliance with the ADA, and are now subject to reinspection by Mr. Maurer, include the following:

a. 600 Fischer Boulevard, Toms River, NJ 08753; *The Independence Project, Inc. v. Bonsangue*, No. 3:19-cv-07121 (D.N.J. filed Feb. 27, 2019)

b. 1808 Route 37, Toms River, NJ 08753; *The Independence Project, Inc. v. Fiesta Plaza Associates, LLC*, No. 3:19-cv-04890 (D.N.J. filed Feb. 6, 2019)

c. 931–953 Fischer Boulevard, Toms River, NJ 08753; *The Independence Project, Inc. v. Hovnanian*, No. 3:19-cv-07113 (D.N.J. filed Feb. 27, 2019)

d. 446 Route 37, Toms River, NJ 08753; *The Independence Project, Inc. v. Briad Wenco, L.L.C.*, No. 3:19-cv-06943 (D.N.J. filed Feb. 26, 2019)

15. Mr. Maurer has visited the Property on several occasions, including when staying at hotels on the barrier island; his most recent visit occurred on or about August 24, 2026, when he entered 7-Eleven and purchased goods. On this, and past occasions, Mr. Maurer has visited the Property as a bona fide patron with the intent to avail himself of the goods and services offered to the public within but found that the Property was rife with violations of the ADA – both in architecture and in policy – and difficult to navigate. On his most recent visit, because the only curb ramp is located behind the designated accessible parking space, Mr. Maurer parked directly in front of the entrance, deployed his van's ramp there, and traveled through the vehicular area of the lot to reach the curb ramp; once inside, merchandise and displays stacked in the aisles made the store difficult to navigate in his wheelchair.

16. Mr. Maurer and his family frequently vacation at the Jersey Shore. In doing so, Mr. Maurer has stayed at several hotels on the barrier island and in close proximity to the Property,[4] and he plans to continue to do so in the future when his family is vacationing at the Jersey Shore, including near Long Beach Island and Seaside Heights. The Property is located in Seaside Park, immediately south of the Seaside Heights hotels at which Mr. Maurer stays.

17. Further, Mr. Maurer travels to the area approximately once per month to visit Eastern Dental in nearby Manahawkin[5] for his son's ongoing orthodontia treatments. Moreover, each member of Mr. Maurer's family uses Eastern Dental as their general dental practitioner for regular cleanings and other dental work.

18. Prior to the onset of his disease and his ensuing disability, Mr. Maurer was a licensed thoroughbred horse trainer and assistant horse trainer for over twenty-five years.

---

[4]Including Sunset Motel, 56 Webster Avenue, Seaside Heights, NJ 08751; Cloud 9 Inn, 124 Hamilton Avenue, Seaside Heights, NJ 08751; and Howard Johnson by Wyndham Toms River, 955 Hooper Avenue, Toms River, NJ 08753.

[5]Eastern Dental, Manahawkin Village Shopping Center, 715 Route 72 West, Manahawkin, NJ 08050.

Horseracing remains his passion; he attends workouts, trainings, sales, and live racing whenever possible – as such he regularly travels across New Jersey, Pennsylvania, Delaware, and New York. The horse racing venues/farms frequently traveled to by Mr. Maurer include, but are not limited to, the following:

a. Delaware Park Race Track, located at 777 Delaware Park Blvd, Wilmington, DE 19804
b. Harrah's Philadelphia Racetrack, located at 777 Harrah's Blvd, Chester, PA 19013
c. Parx Racing, located at 2999 Street Rd, Bensalem, PA 19020
d. Penn National Race Course, located at 777 Hollywood Blvd, Grantville, PA 17028
e. Monmouth Park, located at 175 Oceanport Ave, Oceanport, NJ 07757
f. Meadowlands Racetrack, located at 1 Racetrack Dr, East Rutherford, NJ 07073
g. Saratoga Race Course, located at 267 Union Ave, Saratoga Springs, NY 12866

19. On occasion, when attending live racing at Monmouth Park, Mr. Maurer stays overnight at hotels in proximity to the Property.

20. In sum, the Property is (1) a place Mr. Maurer has visited as a patron on several occasions, (2) in close proximity to the hotels at which he has stayed and will continue to stay when vacationing at the Jersey Shore with his family, (3) in the area to which he travels approximately once per month for his family's dental care in Manahawkin, (4) near several other properties inspected by Mr. Maurer for ADA compliance, and (5) in proximity to the hotels at which he stays overnight when attending live racing at Monmouth Park.

21. Mr. Maurer will return to the Property in the future when staying at the hotels in Seaside Heights and the surrounding area, when traveling to the area for his family's dental appointments in Manahawkin, when staying overnight at hotels in proximity to the Property while

attending live racing at Monmouth Park, and when performing inspections at the properties in the vicinity. Mr. Maurer shall make these visits not only as a patron but also to monitor any progress made with respect to ADA compliance – he hopes his return visits are not further deterred nor made in vain.

22. Mr. Maurer has physically visited the Property and personally encountered exposure to architectural barriers and otherwise harmful conditions that have caused him embarrassment and frustration and endangered his safety during his visits to the Property.

23. The ADA has been law for over thirty (30) years and yet the Property remains non-compliant. Thus, Mr. Maurer has actual notice and reasonable grounds to believe that he will continue to be subjected to discrimination by the Defendant.

24. Mr. Maurer has a realistic, credible, existing, and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to the Property as described, but not necessarily limited to the barriers he has personally encountered or observed – which are listed in Paragraph 32 of this complaint.

25. Following any resolution of this matter Plaintiff will ensure that the Defendant undertakes the remedial work that is required to cure existing violations, under the appropriate standard, and in full compliance with the ADA.

## COUNT I
**Violation of Title III of the**
**Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq*.**

26. Plaintiff realleges and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

27. Enacted by overwhelming bipartisan consensus in 1990, and reinforced with the same consensus in 2008, the ADA reflects Congress's recognition that "discrimination" has

precluded “many people with physical or mental disabilities” from “fully participat[ing] in all aspects of society.”[6]

28. Congress’s objective was “the elimination or reduction of physical and social structures” that thwart “equal-citizenship stature for persons with disabilities.”[7]

29. Title III of the ADA provides a cause of action to “any person” with disabilities who personally encounters an unlawful accessibility barrier and is thus “subjected to discrimination on the basis of disability.”[8]

30. The Defendant has discriminated against the Plaintiff, and other similarly situated mobility impaired persons, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by the ADA.

31. A preliminary inspection of the Property has shown that violations of the ADA exist. That inspection, performed by Plaintiff’s expert, further revealed that the remediation of all violations/barriers listed in Paragraph 32 is both technically feasible and readily achievable. Plaintiff’s expert has based this judgment on personal knowledge of materials, pricing, labor, and the completion of similar projects in the area. The remaining barriers to access – which are procedural in nature and/or policy based – will need to be monitored into the future to ensure that the current discrimination is ceased and never reinstituted.

32. The following are architectural barriers and violations of the ADA that Mr. Maurer has either personally encountered or observed during his visits to the Property, including barriers that precluded him from accessing certain areas and features of the Property:

---

[6] 42 U.S.C. § 12101(a)(1).
[7] *Tennessee v. Lane*, 541 U.S. 509, 535–36 (2004) (Ginsburg, J., concurring).
[8] 42 U.S.C. § 12188(a)(1).

**Parking and Exterior Accessible Route**

a. The Property's only curb ramp is located behind the designated accessible parking space rather than at an access aisle and lacks a level landing at its top, and the walkway along the front and side of the building is otherwise raised above the parking area by a curb; violations of the ADAAG and Sections 208.3.1, 303.4, 402, 406, 406.4, and 502.3 of the 2010 ADA Standards, which require accessible parking spaces to be located on the shortest accessible route to an accessible entrance, access aisles to adjoin an accessible route, changes in level greater than ½ inch to be ramped, and curb ramps to have a running slope no steeper than 1:12 (8.33%), a cross slope no steeper than 1:48 (2.08%), flared sides no steeper than 1:10 where pedestrians must travel across them, and a level landing at least 36 inches long at the top of the ramp. Because the curb ramp is positioned behind the designated space, a wheelchair user unloading from the designated space or the adjacent parking space must travel behind parked vehicles and through the vehicular way to reach it; for this reason Mr. Maurer was forced to unload in front of the entrance and travel through the lot to reach the curb ramp.

b. The designated accessible parking at 7-Eleven consists of a single space marked with the International Symbol of Accessibility that lacks an access aisle – it is separated from the adjacent standard space by a single painted line – and is not maintained, as its striping and painted symbol are faded, and lacks proper identification signage, as no vertical sign identifies the space; violations of the ADAAG and Sections 216.5, 502, 502.2, 502.3, 502.4, and 502.6 of the 2010 ADA Standards and 28 C.F.R. § 36.211, which require each accessible parking space to

be served by an access aisle at least 60 inches wide (96 inches where serving a 96-inch-wide van space) that extends the full length of the space it serves, is marked so as to discourage parking in it, and adjoins an accessible route, parking spaces and access aisles with no slopes steeper than 1:48 (2.08%) in any direction, and each accessible parking space to be identified by a sign showing the International Symbol of Accessibility mounted with its bottom at least 60 inches above the ground, with van-accessible spaces designated "van accessible," and which require a public accommodation to maintain its accessible features in operable working condition. Mr. Maurer's van utilizes a fold-out ramp which requires an access aisle in order to fully extend; without one he cannot safely deploy his ramp from the designated space, and parking there adds the additional fear of becoming blocked out from his van (or trapped inside) by an adjacent vehicle.

c. The exterior accessible route leading to the 7-Eleven entrance is obstructed and reduced in width – bollards are set on the walkway in front of the building and at the edge of the parking area, and an ice merchandiser, stacked pallets of bottled water, a wooden rack, and trash receptacles are placed on the walkway along the front and side of the building; violations of the ADAAG and Sections 302, 303, 402, and 403.5.1 of the 2010 ADA Standards and 28 C.F.R. § 36.211, which require floor and ground surfaces to be stable, firm, and slip resistant, require accessible routes to have a running slope no steeper than 1:20 (5%), a cross slope no steeper than 1:48 (2.08%), a clear width of at least 36 inches, and no vertical changes in level greater than ¼ inch (with changes between ¼ inch and ½ inch beveled no steeper than 1:2), with any reduction of the clear width to 32 inches limited to a

length of 24 inches, and require a public accommodation to maintain its accessible features in operable working condition. These obstructions have forced Mr. Maurer to maneuver around merchandise and bollards, and at points to leave the walkway, in order to reach the entrance.

d. The Property fails to provide the requisite number of fully compliant accessible parking spaces and van-accessible parking spaces (as well as the requisite number of access aisles and van access aisles) – the only designated space has no access aisle; a violation of the ADAAG and Sections 208 and 502 of the 2010 ADA Standards, which require the number of accessible spaces set by Table 208.2 based on the total number of parking spaces provided, with at least one of every six accessible spaces being van accessible, located on the shortest accessible route to an accessible entrance. Due to the lack of compliant accessible parking (specifically the lack of a compliant van access aisle), Mr. Maurer has been forced to park and unload away from the designated space so that he could freely access his vehicle via his fold-out ramp.

e. The Property fails to provide a continuous accessible route throughout the entirety of the Property – including along the walkway at the front and side of the building; violations of the ADAAG and Sections 206.2.2 and 402 of the 2010 ADA Standards, which require at least one accessible route connecting all accessible buildings, facilities, elements, and spaces on the same site, and require accessible routes to have a running slope no steeper than 1:20 (5%), a cross slope no steeper than 1:48 (2.08%), a clear width of at least 36 inches, and no vertical changes in level greater than ¼ inch (with changes between ¼ inch and ½ inch beveled no

steeper than 1:2). These barriers have forced Mr. Maurer to travel through the vehicular area of the lot in order to reach the entrance.

f. The Property fails to provide a compliant route to the adjacent street, sidewalk, and/or public transportation route – the public sidewalk along Central Avenue is separated from the store walkway by the parking area and curbs, with no marked or accessible pedestrian route connecting it to the entrance. Mr. Maurer is precluded from accessing the Property from these areas due to the lack of an accessible route; a discriminatory omission which limits his options for access and transportation, and a violation of the ADAAG and Section 206.2.1 of the 2010 ADA Standards, which requires at least one accessible route within the site from public streets and sidewalks, public transportation stops, and accessible parking to an accessible entrance.

**<u>Access to Goods and Services</u>**

g. 7-Eleven provides a sales and service counter which is mounted beyond the prescribed reach ranges (above 36 inches AFF); a violation of the ADAAG and Sections 227.3, 308, and 904.4 of the 2010 ADA Standards, which require operable parts to be mounted between 15 and 48 inches above the floor, and sales and service counters to provide a portion at least 36 inches long and no higher than 36 inches above the floor, with a clear floor space positioned for a parallel or forward approach. Due to the height of the counter Mr. Maurer cannot make use of it to pay for and receive his purchases in the same manner as non-disabled patrons.

h. 7-Eleven provides self-service elements – including coffee and fountain beverage dispensers and condiments – whose operable parts, dispensing devices, and self-

service shelves are located beyond the prescribed reach ranges; a violation of the ADAAG and Sections 227.4, 308, and 904.5.1 of the 2010 ADA Standards, which require self-service shelves and dispensing devices for food and beverages to comply with Section 308, which places shelves and operable parts no higher than 48 inches above the floor for an unobstructed reach, and no higher than 44 inches where the reach is over an obstruction 20 to 25 inches deep, with a clear floor space positioned for a forward or parallel approach. Due to their height Mr. Maurer cannot independently serve himself from these elements.

i. The interior accessible route within 7-Eleven is obstructed – stacked cases of merchandise and floor displays are placed within the aisles, reducing the clear width of the route below the required minimum; violations of the ADAAG and Sections 225.2.2, 402, and 403.5.1 of the 2010 ADA Standards and 28 C.F.R. § 36.211, which require self-service shelving to be located on an accessible route, an accessible route with a clear width of at least 36 inches, reducible to 32 inches for a length of no more than 24 inches, and require a public accommodation to maintain its accessible features in operable working condition. These obstructions made the store difficult for Mr. Maurer to navigate and prevented him from reaching goods along the aisles.

**Restrooms**

No public restroom was reported at 7-Eleven. Further inspection will determine whether a restroom is provided for public use and, if so, whether it complies with Sections 213 and 601 through 606 of the 2010 ADA Standards.

33. Each of the foregoing violations is also a violation of the ADA Standards for Accessible Design, originally published on July 26, 1991 and republished as Appendix D to 28 C.F.R. part 36 ("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter 2, and Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified as Appendices B and D to 36 C.F.R. part 1191 ("ADAAG"); and the 2010 Standards for Accessible Design ("2010 ADA Standards"), as promulgated by the U.S. Department of Justice.[9]

34. The discriminatory violations described in Paragraph 32 may not be an exhaustive list of the ADA violations that exist at the Property, but they are the result of a preliminary inspection and include those personally encountered or observed by Mr. Maurer. Given the violations discovered and listed herein, the Plaintiff alleges, on information and belief, that there are other violations/barriers at the Property which relate to his disability. Thus, Plaintiff requires thorough inspection of the Property in order to photograph and measure the architectural barriers which exist at the Property in violation of the ADA. Once said inspection has been completed, the Plaintiff may amend this complaint in order to provide proper notice to the Defendant regarding the full scope of this action.[10]

35. Plaintiff, and other mobility impaired persons, will continue to suffer discrimination, injury, and damage without the immediate relief provided for by the ADA and requested herein.

---

[9] 28 C.F.R. § 36.104.

[10] *See Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1047 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, they can sue to have all barriers that relate to their disability removed regardless of whether or not they personally encountered them); *accord Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184 (2d Cir. 2013) (per curiam) (plaintiff who used a wheelchair had standing to challenge barriers at a restaurant related to his disability that he had not yet encountered); *Steger v. Franco, Inc.*, 228 F.3d 889 (8th Cir. 2000) (plaintiff who encountered a barrier had standing to challenge other barriers at the property related to his disability).

36. Defendant has discriminated against Plaintiff, and other mobility impaired persons, by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of the ADA.

37. Defendant continues to discriminate against Plaintiff, and other mobility impaired persons, by failing to remove architectural barriers, and communication barriers that are structural in nature.[11]

38. Defendant continues to discriminate against Plaintiff, and other mobility impaired persons, by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities – including, as described above, by failing to maintain the designated accessible parking space and its markings and signage, and by placing merchandise, displays, and other objects within the exterior and interior accessible routes.[12]

39. Defendant continues to discriminate against Plaintiff, and other mobility impaired persons, by failing to undertake such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.[13]

40. Pursuant to 28 C.F.R. § 36.304(a) the Defendant shall remove all existing architectural barriers, including communication barriers that are structural in nature, where such

[11] 42 U.S.C. § 12182(b)(2)(A)(iv).
[12] 42 U.S.C. § 12182(b)(2)(A)(ii).
[13] 42 U.S.C. § 12182(b)(2)(A)(iii).

removal is readily achievable; this duty began at the outset of the ADA for all existing facilities (regardless of age) and remains continuous and ongoing.

41. The ADA contains no "grandfather" provision. Title III's barrier-removal obligation applies to every existing place of public accommodation without regard to when it was constructed,[14] and the "grandfather" provisions often found in local building codes do not exempt a public accommodation from its obligations under the ADA.[15] A facility's age bears only on which standard governs a given element, not on whether the ADA applies; the sole protection the regulations afford existing elements is the limited safe harbor of 28 C.F.R. § 36.304(d)(2), which applies only to elements that already comply with the 1991 Standards.

42. If the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993,[16] then the Defendant's facility must be readily accessible to and usable by individuals with disabilities in accordance with the 1991 Standards or, for construction commenced on or after March 15, 2012, the 2010 Standards.[17]

43. Pursuant to 28 C.F.R. § 36.402(a)(1), "any alteration" made to the Property after January 26, 1992, must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Property are readily accessible to and usable by individuals with disabilities, including individuals, like Mr. Maurer, who use wheelchairs. An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[18] Discovery in this matter will reveal if and when such alterations have taken place at the Property,

---

[14] 42 U.S.C. § 12182(b)(2)(A)(iv); 28 C.F.R. § 36.304(a).
[15] U.S. Dep't of Justice, Civil Rights Div., *ADA Update: A Primer for Small Business* (Mar. 2011).
[16] As defined by 28 C.F.R. § 36.401(a)(2).
[17] 28 C.F.R. § 36.406(a).
[18] 28 C.F.R. § 36.402(a)(2).

and to what corresponding technical and scoping specification the Defendant must meet/exceed to bring the Property into compliance with the ADA.

44. 28 C.F.R. § 36.304(d)(2) controls with respect to the corresponding technical and scoping specification to which each element that has not been altered must comply with or be modified to meet. Those are defined as follows:

a. Elements that have not been altered on or after March 15, 2012, and that comply with the corresponding technical and scoping specifications in the 1991 Standards, are not required to be modified to comply with the 2010 Standards.

b. Before March 15, 2012, elements that did not comply with the 1991 Standards were required to be modified to comply with either the 1991 Standards or the 2010 Standards.

c. On or after March 15, 2012, elements that do not comply with the 1991 Standards must be modified to comply with the 2010 Standards.

45. Plaintiff is not required to notify the Defendant of its violations of the ADA nor its ongoing discrimination prior to the filing of this action. To that end, Mr. Maurer has found that voicing concerns to employees and management, making phone calls, and writing letters is futile. In his experience the only way to spur action and achieve the accessibility required under the law is to file matters, like this one, and pray for the relief contained herein.

46. Plaintiff is without adequate remedy at law and is suffering irreparable harm, including injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiff and the Defendant, a remedy in equity is warranted. The public interest would not be disserved by the issuance of a permanent injunction.

47. Pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505, Plaintiff is entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendant.

48. Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the Property and make such readily accessible to and usable by the Plaintiff and all other persons with disabilities as defined by the ADA.

**WHEREFORE**, Plaintiff respectfully demands:

a. The Court issue a Declaratory Judgment determining that the Defendant is in violation of Title III of the ADA.

b. Injunctive relief against the Defendant including an order to (1) cure all ADA violations existing at the Property listed herein – and those later found through discovery – within the next six months; (2) make the Property accessible to and usable by individuals with disabilities; and (3) require the Defendant to make reasonable modifications in policies, practices, or procedures, to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c. An Order requiring the Defendant to cease its discriminatory practices and to maintain the requisite accessible features at the Property – as required by the ADA.

d. An award of attorney's fees, costs, and litigation expenses (including expert fees and costs) pursuant to 42 U.S.C. § 12205.

e. Such other relief as the Court deems just and proper and is allowable under Title III of the ADA.

## COUNT II
**Violation of New Jersey Law**
**Against Discrimination, N.J.S.A. 10:5-1 *et seq.***

49. Plaintiff realleges and incorporates, by reference, all of the allegations contained in all of the preceding paragraphs.

50. The Property is a place of public accommodation as defined by N.J.S.A. 10:5-5.

51. New Jersey law provides that all persons shall have the opportunity to obtain all the accommodations, advantages, facilities, and privileges of any public place of accommodation without discrimination on the basis of disability. This opportunity is recognized and declared to be a civil right.[19]

52. As set forth above, the Defendant has violated the LAD by denying Mr. Maurer, and all other mobility impaired persons, the full and equal enjoyment of the goods, facilities, services, and accommodations available at the Property.

53. As a result of the aforementioned discrimination through repeated exposure to architectural barriers and other harmful conditions, Mr. Maurer has sustained injury through the Defendant's actions – either intentionally or negligently – in the form of emotional distress, mental anguish, dignitary harm, and humiliation; in violation of the LAD.

**WHEREFORE**, Plaintiff respectfully demands:

a. That this Court assume jurisdiction.

b. The Court issue a Declaratory Judgment determining that the Defendant is in violation of the LAD.

c. An injunction ordering the Defendant to immediately comply with the LAD by removing all architectural barriers listed herein or later found through discovery.

---

[19] N.J.S.A. 10:5-4.

d. A monetary award consisting of the individual Plaintiff's damages – to the maximum extent permitted – attorney's fees, and litigation expenses, including expert fees and costs.

e. An order requiring the Defendant to cease its discriminatory practices and to maintain the requisite accessible features at the Property – as required by the LAD.

f. Other relief that this Court deems just and proper and is allowable under the LAD.

Respectfully submitted on this 28th day of October 2026,

*/s/ Jon G. Shadinger Jr.*
Jon G. Shadinger Jr., Esq.
Shadinger Law, LLC
2220 N. East Avenue
Vineland, NJ 08360
(609) 319-5399
js@shadingerlaw.com
*Attorney for Plaintiff, Dennis Maurer*